UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

WANDA L. ARMES, )
)
    Plaintiff, )
)
v. ) No.: 3:06-CV-66
) (VARLAN/GUYTON)
)
LINDA S. MCMAHON, )
Acting Commissioner of Social Security, )
)
    Defendant. )

# MEMORANDUM OPINION

This matter is before the Court on the plaintiff's Motion for Summary Judgment [Doc. 12] and the defendant's Motion for Summary Judgment [Doc. 19]. Having exhausted her administrative remedies, plaintiff Wanda L. Armes seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the defendant Commissioner, denying her application for supplemental security income benefits under the Social Security Act.

The ALJ made the following findings:

> 1.) The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
>
> 2.) The claimant's thyroid, disc, and depressive disorders are considered "severe" impairments based on the requirements in the regulations 20 C.F.R. § 416.920(b).
>
> 3.) These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Her depression imposes no more

than moderate restrictions of activities of daily living or ability to maintain social functioning or ability to sustain concentration, persistence, or pace. She has not had extended episodes of mental decompensation and she functions adequately outside of a highly supportive setting.

4.) The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

5.) The claimant has the following residual functional capacity: to lift and carry 20 pounds occasionally and 10 pounds frequently, and to combine sitting and standing/walking at her option for 8 of 8 hours. She can perform no more than occasional stooping, climbing, or crouching. She has a moderate limitation of ability to perform tasks within a schedule, maintain attendance, and be punctual within customary employer tolerances, to relate to co-workers or the public, to respond appropriately to workplace changes, to maintain concentration and attention for extended periods, to perform detailed instructions, and to complete a normal workday or workweek and perform at a consistent pace without an unreasonable number or length of rest periods.

6.) The claimants past relevant work as electronics assembler did not require the performance of work-related activities precluded by her residual functional capacity (20 C.F.R. § 416.965).

7.) The claimant's medically determinable impairments do not prevent the claimant from performing her past relevant work.

8.) The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. § 416.920(e)).

(Tr. 31-32).

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to evaluating whether substantial evidence supports the ALJ's conclusion

and whether the ALJ applied proper legal standards. *Key v. Callahan*, 109 F.3d 273 (6th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001)(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). To determine whether substantial evidence exists, the Court must review the administrative record as a whole. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Reversal of the Commissioner's findings is not appropriate "merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *see also Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986) (holding that, in a close case, unless the court is persuaded that the Secretary's findings are "legally insufficient," they should not be disturbed). The Court may not review the case de novo, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

The regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled, 20 C.F.R. § 416.920. The ALJ properly cited this requirement and properly applied it to evaluate the plaintiff's claim that she became disabled in May, 2002 (Tr. 25).

The plaintiff moves for summary judgment, arguing that the ALJ erred by: improperly rejecting the reports of the plaintiff's treating physician; finding that plaintiff's activities of daily living were not severely restricted; posing an incomplete hypothetical to the vocational

3

expert; finding plaintiff was not credible; and finding that plaintiff could perform past-relevant work. [Doc. 13].

The Commissioner argues that the ALJ's findings in all respects are supported by substantial evidence. Specifically, the Commissioner argues that the ALJ: properly resolved conflicts in the medical evidence; properly evaluated the plaintiff's restrictions; posed an appropriate hypothetical; was justified in making his credibility determination with respect to the plaintiff; and properly concluded that plaintiff could perform past-relevant work.[Doc. 20].

The plaintiff first argues that the ALJ erred in rejecting the opinions of the plaintiff's treating physician, Dr. Littell. The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant over a long period of time has a deeper insight into the claimant's condition than one who has examined a claimant but once. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). However, the ALJ is not required to accept any medical opinion, even that of a treating physician, if that opinion is not supported by sufficient clinical findings. *See Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). If the treating physician's opinion does not meet the test for controlling weight, the ALJ then weighs the opinion along with the other opinions in the record. *See* 20 C.F.R. § 404.1527(d)(2).

The ALJ found that the opinion of Dr. Littell was not supported by appropriate clinical findings. [Tr. 29]. Specifically, the ALJ found that Dr. Littell's opinion seemed to be based upon the plaintiff's subjective complaints rather than upon objective findings. The

4

ALJ further found that Dr. Littell's opinion was inconsistent with other objective evidence of record. After reviewing the record, the Court finds that the ALJ's decision to discount Dr. Littell's opinion was supported by substantial evidence.

There are multiple sources of objective medical evidence which are inconsistent with Dr. Littell's diagnosis of complete disability. Specifically, Dr. Clapp opined on April 4, 2002, that the plaintiff's EMG and nerve conduction study had come back "totally normal" [Tr. 377]. Additionally, on March 12, 2001, plaintiff's MRI "came back showing some mild degenerative disc disease, a little bit of disc desiccation and a bulging disc," but the doctor told plaintiff "as long as [the bulging disc] is not causing her any lower extremity pains it would probably be better just to watch it." [Tr. 414]. Plaintiff exhibited negative straight leg tests on that same date, and "there [was] no sign of muscle wasting" [*Id.*], but plaintiff did exhibit positive straight leg tests on other visits. [*See* Tr. 413, 417]. On July 2, 2001, Dr. McMahon opined that plaintiff had a negative straight leg raise, that he could not reproduce any radiculopathy, and that plaintiff's "objective exam [looked] quite good." [Tr. 247]. Plaintiff's endocrinologist reported that plaintiff's hypothyroidism "required occasional labs and follow up once every three to six months," but in no way indicated that plaintiff's ailment was disabling. [Tr. 468]. Furthermore, Dr. Littell's conclusory opinion of disability is afforded no special weight as the ultimate decision of disability is reserved to the Commissioner. See 20 C.F.R. §§ 404.1527(e), 416.927(e). Given that the record does contain objective medical evidence which is inconsistent with Dr. Littell's finding of complete disability, the ALJ did not err by failing to defer to Dr. Littell's opinion.

The plaintiff next argues that the ALJ erred by finding that the plaintiff's activities of daily living were not severely restricted. Plaintiff contends that "as early as 2002, a physician determined [plaintiff] was unable to perform activities of daily living." [Doc. 13 at p. 20]. It is true that the medical records from plaintiff's June, 2002, visit to Dr. Littell indicate that plaintiff was "unable to do ADL's." [Tr. 465]. However, the Court notes that this statement appears in the chief complaint and history of present illness section of the record, not in the assessment section. Given that the statement appears in the section where a doctor normally indicates the patient's symptoms as described by the patient, the Court does not find that Dr. Littell actually opined that plaintiff could not perform the activities of daily living. Rather, it would appear the plaintiff told the doctor that she could not perform the activities of daily living. Given that the plaintiff is not an acceptable medical source, the ALJ did not err by disregarding this finding. *See* 20 C.F.R. 416.913 (describing acceptable medical sources).

Additionally, there is evidence of record supporting the ALJ's finding that plaintiff is moderately restricted with respect to activities of daily living. The record contains two mental assessments, both prepared by DDS physicians, and both assessments indicate that plaintiff had only mild limitations with respect to activities of daily living. [Tr. 262, 344]. Additionally, the intake evaluation prepared by Ridgeview Psychiatric Hospital in April, 2001, indicates that plaintiff had no problems with community living skills. [Tr. 274]. Therefore, the Court finds that the ALJ's decision that plaintiff has only moderate limitations with respect to activities of daily living was supported by substantial evidence.

The plaintiff next argues that the ALJ erred by posing an incomplete hypothetical to the vocational expert. The plaintiff contends that the ALJ's hypothetical was flawed because he did not ask the vocational expert to consider plaintiff's extreme social avoidance, significant deficits in social functioning, a highly questionable ability to relate appropriately with co-workers and the public, frequent panic attacks, and a quite limited ability to adapt to change in a work situation. Plaintiff contends that the ALJ's hypothetical was further flawed by the ALJ's assumption that plaintiff could stand or sit at her option while performing past relevant work. Plaintiff also argues that the ALJ should have included plaintiff's inability to read and limited education, as well as plaintiff's asthma and other respiratory ailments.

It is well settled that

> once the ALJ determined plaintiff did not have the residual functional capacity to perform [her] past relevant work, the burden shifted to the Secretary to show that plaintiff possesses the capacity to perform other substantial gainful activity that exists in the national economy. To meet this burden, there must be "a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a "hypothetical" question, but only "if the question accurately portrays [plaintiff's] individual physical and mental impairments."

*Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citations omitted). The Sixth Circuit has further held that "a hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) . Plaintiff cites to *Howard v.*

7

*Comm'r of Soc. Sec.*, 276 F.3d 235 (6th Cir. 2002), in support of her argument, but the *Webb* court held that "we do not read *Howard* to hold that hypothetical questions to vocational experts are required to include lists of claimants' medical conditions." *Webb*, 368 F.3d at 633. Accordingly, the ALJ's hypothetical was only required to include plaintiff's limitations, and not every ailment plaintiff suffers from. Therefore, it was not error to fail to list plaintiff's respiratory ailments, as there is no medical evidence indicating that plaintiff's respiratory ailments were disabling.

The ALJ found that plaintiff possessed the following residual functional capacity ("RFC"):

> to lift and carry 20 pounds occasionally and 10 pounds frequently, and to combine sitting and standing/walking at her option for 8 of 8 hours. She can perform no more than occasional stooping, climbing, or crouching. She has a moderate limitation of ability to perform tasks within a schedule, maintain attendance, and be punctual within customary employer tolerances, to relate to co-workers or the public, to respond appropriately to workplace changes, to maintain concentration and attention for extended periods, to perform detailed instructions, and to complete a normal workday or workweek and perform at a consistent pace without an unreasonable number or length of rest periods.

[Tr. 31]. The ALJ posed the following hypothetical to the vocational expert:

> [a]ssume I would find that the claimant was limited to a range of light work or that she would be precluded from work which required any more than occasional climbing, stooping, or crouching. She would need a job that would allow her to sit or stand as needed for comfort. And she would have moderate restrictions in her ability to perform within a schedule; maintain attendance; and be punctual within customary tolerances; to relate to coworkers; to deal with the public; to respond

> appropriately to changes in the work setting; to maintain attention and concentration for extended periods; to understand, remember, and carry out detailed instructions; and to complete a normal workday and workweek; and perform at a consistent pace without an unreasonable number and length of rest periods. Given these restrictions and taking into account the claimant's age, education, and prior relevant work experience. . .

[Tr. 540]. After comparing the two, the Court finds that the hypothetical addresses each of the limitations expressed in the ALJ's RFC determination, therefore the ALJ did not err in relying upon the testimony of the vocational expert.

Furthermore, the ALJ's RFC determination is supported by substantial evidence, as the DDS physicians made similar RFC determinations [Tr. 248 - 264, 323, 332 - 347], and the only contrary finding is Dr. Littell's opinion that plaintiff is completely disabled, which the Court has already addressed. The Court notes that the report of William Benoit, M.A., L.P.E., indicates that plaintiff has several limitations which he describes as "significantly limited to at least a moderate level" [Tr. 329], however Mr. Benoit's description is not inconsistent with the ALJ's finding of moderate restrictions in those areas.

With respect to the assumption by the ALJ and vocational expert that the plaintiff could sit or stand at her option during her past relevant work as an electronics assembler, the Court finds that the ALJ's decision is still supported by substantial evidence. Even if plaintiff did not have the option to sit or stand in that position, the vocational expert did identify other jobs plaintiff could perform, such as a production inspector, hand packer, and production assembler, a small products assembler, a small products inspector, and a general

9

production worker. Therefore, even discounting the job of electronics assembler, there do exist other jobs in the economy plaintiff could perform.

With respect to plaintiff's inability to read and limited education, the ALJ did ask the vocational expert to consider plaintiff's education, and the vocational expert was present throughout plaintiff's testimony, so the vocational expert heard all of the education related limitations plaintiff described. Therefore the ALJ did not err by failing to specifically describe plaintiff's educational background. *See Chandler v.Sec'y of Health & Human Servs.*, No. 93-4213, 1994 WL 669670, at **3 (6th Cir. Nov. 29, 1994) ("although the hypothetical question made no specific reference to [plaintiff's] borderline IQ, reading disorder, or illiteracy, the vocational expert was aware of these conditions due to [plaintiff's] own testimony"). Furthermore, plaintiff's medical records indicate that plaintiff is literate [Tr. 275], therefore there is some question as to whether plaintiff actually is illiterate. Accordingly, the Court finds that the ALJ did not err in his RFC determination, nor by relying on the testimony of the vocational expert.

The plaintiff next argues that the ALJ erred in finding the plaintiff's testimony was not credible. Initially, the Court notes that an ALJ's determinations of credibility are given great weight and deference because the ALJ has the opportunity to observe a witness's demeanor while testifying. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). After reviewing the record, the Court finds that the ALJ did not err by finding the plaintiff's testimony less than credible. The record shows that one of plaintiff's treating physicians, Dr. Clapp, found it "very suspicious" that plaintiff wanted to refill her narcotics prescription

early. [Tr. 409]. Dr. Clapp's notes also indicate that he "told [plaintiff] that she has gone from taking no medication to taking 90 of Hydrocodone in less than two to three weeks which to me seems like pretty excessive change in what is going on. I told her I could not refill her medications today." [*Id.*]. Additionally, it appears that plaintiff sustained a football injury on August 13, 2002 [Tr. 463], which would belie a claim of continuous disability dating from May, 2002. Given that there is medical evidence to support the ALJ's findings regarding the severity of plaintiffs mental and physical limitations, given the lack of objective medical evidence to support the plaintiff's claims, and given all of the other evidence of record, the Court finds that substantial evidence supports the ALJ's decision to discount plaintiff's credibility.

Finally, plaintiff argues that the ALJ erred by finding that plaintiff could return to her past work as an electronics assembler. However, as noted above, even if the ALJ erred by finding that the plaintiff could perform the job of electronics assembler, the testimony of the vocational expert indicated that there were a number of other jobs in the local and national economy which plaintiff could perform. Therefore, if the ALJ did err, it was only harmless error, as there are still a sufficient number of jobs plaintiff could perform in the national economy to support a finding of not disabled. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 507 (6th Cir. 2006) (citation omitted) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.").

After careful review of the record, the Court finds that there is substantial evidence to support the ALJ's decision that the plaintiff was not disabled, as defined in the Social Security Act, at any time through the date of the ALJ's decision. The ALJ's RFC determination reasonably accommodated the plaintiff's combined impairments, and her work capacity was properly reduced by appropriate limitations. The medical record plainly supports these limitations and provides substantial evidence to support the ALJ's conclusions concerning the plaintiff's problems.

For the reasons set forth above, the Court rejects each of the plaintiff's statements in error, see Stump v. Secretary of Health and Human Services, 1994 WL 194174, 25 F.3d 1050 (6th Cir.), and finds that substantial evidence supports the ALJ's decision. The plaintiff's motion for summary judgment [Doc. 12] will be denied; the Commissioner's motion for summary judgment [Doc. 19] will be granted; the decision of the Commissioner will be affirmed; and this case will be dismissed.

**ORDER ACCORDINGLY.**

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE